408 So.2d 1354 (1982)
STATE of Louisiana
v.
Shelton MESSER.
No. 81-KA-1452.
Supreme Court of Louisiana.
January 25, 1982.
Rehearing Denied February 19, 1982.[*]
*1355 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Knowles M. Tucker, Dist. Atty., Daniel G. Guidry, J. Phil Haney, Asst. Dist. Attys., for plaintiff-appellee.
Paul J. deMahy, St. Martinville, Helen G. Roberts, of Gravel, Robertson & Brady, Alexandria, for defendant-appellant.
FRED W. JONES, Jr., Justice Ad Hoc.[**]
Defendant Messer was charged with two counts of attempted first degree murder (La. R.S. 14:27, 30); found guilty by jury as charged; and sentenced to serve 15 years imprisonment on each count, with the sentences to run consecutively. Defendant appealed the convictions and sentences, relying on five assignments of error, three of which were abandoned.
During the early morning hours of December 29, 1979, defendant Messer and accomplices, Arnaud, Dixon and Matthews, were discovered in the act of burglarizing a shipyard near Butte LaRose by the owner, Serrette. When the latter fired a warning shot, the intruders immediately returned to their pickup trucks and fled the scene, with Servette in hot pursuit. Dixon and Arnaud were traveling in a green and white Dodge pickup truck. Matthews was driving a blue Chevrolet pickup truck, with defendant Messer riding as a passenger.
In the meantime the state police had been notified that an individual in a maroon and white pickup truck (Serrette) was chasing two other pickup trucks whose occupants had burglarized his place of business. State Trooper Fogleman responded to the call, catching up with the described vehicles on Interstate 10, where he saw the Servette pickup truck in a line behind the Chevrolet pickup truck and the Dodge pickup truck.
Accelerating to a speed in excess of 90 miles per hour, flashing his red lights and sounding his siren, Fogleman maneuvered his car between the Chevrolet truck and the Dodge truck in an effort to stop those vehicles. Heedless of the signals, the driver of the Dodge truck chose to exit the interstate, followed by Fogleman and the driver of the Chevrolet truck. At this point State Trooper Ackal joined the chase, following in line immediately behind the Chevrolet truck.
As the Chevrolet truck got closer to Fogleman's car (now caught between the two trucks carrying the fleeing burglars), Ackal advised Fogleman that the passenger in the *1356 Chevrolet truck (later identified as defendant Messer) was sitting in the truck window aiming a weapon at Fogleman. When Ackal turned on his grill lights in an effort to distract defendant, the latter fired two shots at Ackal.
Fearful that he was going to be fired upon from the rear, Fogleman abruptly turned his car off the highway into an adjoining residential yard. During this maneuver Fogleman heard two more gunshots, apparently fired by defendant in his direction. Fogleman then drove back onto the highway and caught up with Ackal who was still in pursuit.
The chase continued with the two pickup trucks occupied by the fleeing burglars, traveling side by side, followed by the state police units, also running side by side. Defendant was observed firing at his pursuers, who returned the fire. Finally, the chase ended when a round from Ackal's weapon struck and killed the driver of defendant's pickup truck, causing the vehicle to crash. Defendant was apprehended at that time.

Assignment of Error No. 4
This trial took place in St. Martin Parish. Defendant was from the Rapides Parish area and his co-defendant, Arnaud, was from St. Landry Parish.
In this assignment defendant contends the trial judge erred in refusing to prohibit the prosecutor from making inflammatory and prejudicial statements in his closing argument. The remarks in question are:
"Ladies and Gentlemen, I would suggest to you you have an opportunity today to tell these people from Port Barre and Tioga that you don't want them coming into your parish and committing crimes, and then when they get caught, going out and shooting at the state police."
Objection by defense counsel was overruled, and the prosecutor continued on:
"BY MR. HANEY: Let's send that message loud and clear that you don't want people in here doing that kind of thing, and then when they get caught in the act, thinking they can get rid of the only witnesses we've got, shooting at those state police officers who were out there trying to protect us. Let's send them that message loud and clear. You have the opportunity to do that.
And I suggest, it's easy to do. You've got state troopers here that are credible, that don't have any reason to lie, that are corroborated by the co-defendant, and they corroborate each other. And I would suggest to you that when you go back and deliberate and you vote for a finding of guilty as charged on both counts, you're going to be sending a message loud and clear to everybody out there."
In the rebuttal, the prosecutor concluded:
"Lets send that message loud and clear that the Parish of St. Martin is not going to have those kind of people in this parish."
La. C.Cr.P. Art. 774 restricts closing arguments in criminal cases to the evidence admitted, to the lack of evidence, to conclusions of fact that may be drawn therefrom, and to the law applicable to the case.
A prosecutor should refrain from argument which tends to divert the jury from its duty to decide the case on the evidence by injecting issues broader than the guilt or innocence of the accused under the controlling law or by making predictions of the consequences of the jury's verdict. American Bar Association Standard 5.8(d). Also see State v. Hayes, 364 So.2d 923 (La.1978).
The prosecutor's unwise remarks in this case could easily be construed as an attempt to divert the jury's attention from the guilt or innocence of the defendant and focus that attention on the expediency of simply rendering a verdict which would symbolize the parish's stand against crime. This "community call to arms" was obviously designed to personalize the crimes for the *1357 jury and make it appear that the defendant's gunshots at the troopers were somehow directed at the parish as a whole. As such, the quoted remarks were clearly improper.
On the other hand, it is axiomatic that before a verdict will be overturned on the basis of improper argument this court must be firmly convinced that the jury was influenced by the remarks and that they contributed to the verdict. State v. Carthan, 377 So.2d 308 (La.1979); State v. Lee, 364 So.2d 1024 (La.1978).
The defendant in this case took the stand and admitted firing toward the troopers' cars, but contended that he was aiming above the vehicles and simply attempting to effectuate an escape. However, both Fogleman and Ackal were close enough to defendant's truck to observe the direction in which he was firing. They related that the defendant shot at them first, reloaded his gun and continued shooting. Two other troopers, who were passed during the pursuit, testified that they saw gunfire coming from the passenger side of the truck in which defendant was riding and that the shots were directed at Fogleman and Ackal. A forensic scientist stated that he found a bullet fragment, consistent with the quality of the ammunition found in defendant's truck, lodged in the front tire of the Ackal vehicle.
In view of this substantial evidence of defendant's guilt of the crimes charged, we are not thoroughly convinced that the prosecutor's improper remarks in his closing argument influenced the jury and contributed to its verdict.
This assignment lacks merit.

Assignment of Error No. 5
In this assignment defendant complains that, by imposing consecutive sentences for each count of two crimes which arose out of the same incident, the trial court meted out an excessive sentence. Art. 1, § 20, La. Consti. of 1974.
As a general rule, the imposition of consecutive rather than concurrent sentences for crimes arising from a single course of conduct requires particular justification. State v. Franks, 373 So.2d 1307 (La.1979); State v. Cox, 369 So.2d 118 (La. 1979).
In this case the trial judge adequately complied with La. C.Cr.P. Art. 894.1 by stating the factual basis and individual considerations which led to his determination of the appropriate sentences and the manner in which they were to be served. Consequently, we are in a position to review the claim of excessiveness in the light of the criteria set forth in Art. 894.1, the circumstances of the crimes and the trial court's stated reasons and factual basis for the sentencing decision.
The statutory maximum sentence for conviction of two counts of attempted first degree murder is 100 years imprisonment (50 years for each offense). Defendant's total sentence of imprisonment, 30 years, is well within this statutory maximum. The question here is whether the trial judge abused his discretion in sentencing defendant to serve consecutive rather than concurrent prison sentences.
In explicating the basis for his sentences, the trial judge noted that, while awaiting trial for these crimes, defendant had committed crimes in Evangeline Parish. Defendant did not question the correctness of nor attempt in any way to refute this statement. The function of the consecutive sentence is similar to that of the sentence imposed on habitual or dangerous offenders. Because of this repeated criminality the offender who has rendered himself subject to multiple sentences may pose the same type of unusual risk to the safety of the public. State v. Cox, supra.
By engaging in other criminal activity while out on bail awaiting trial for these offenses, defendant has placed himself in the category of an habitual offender, from whom the public deserves protection. This *1358 fact provided the special justification for the imposition by the trial judge of consecutive rather than concurrent sentences in this case.
This assignment is without merit.
Decree
For the reasons set forth, defendant's convictions and sentences are affirmed.
NOTES
[*] DENNIS, J., would grant a rehearing.
[**] Judges O. E. Price of the Court of Appeal, Second Circuit, John C. Boutall, Court of Appeal, Fourth Circuit, and Fred W. Jones, Jr., Court of Appeal, Second Circuit, participated in this decision as Associate Justices Ad Hoc, joined by Justices Pascal F. Calogero, Jr., Walter F. Marcus, Jr., James L. Dennis and Jack C. Watson.