STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-148

STATE OF LOUISIANA

VERSUS

MARY HENDERSON TRAHAN

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. CR 124728
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

**********

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and Shannon J. Gremillion, Judges.

Gremillion, J., dissents and assigns written reasons.

REVERSED. ENTRY OF ACQUITTAL ORDERED.

Michael Harson
District Attorney - 15th Judicial District Court
Daniel M. Landry III
Assistant District Attorney - 15th Judicial District Court
P. O. Box 3306
Lafayette, LA 70506
Telephone: (337) 232-5170
COUNSEL FOR:
    Plaintiff/Appellee - State of Louisiana

John Clay Lejeune
P. O. Box 1919
Crowley, LA 70527
Telephone: (337) 788-1505
COUNSEL FOR:
    Defendant/Appellant - Mary Henderson Trahan

**THIBODEAUX, Chief Judge.**

Defendant, Mary Henderson Trahan, was indicted for second degree murder, a violation of La.R.S. 14:30.1. A jury found her guilty as charged after a one-day trial. The trial court sentenced Defendant to life imprisonment without the benefit of probation, parole, or suspension of sentence.

Defendant perfected a timely appeal and alleges several assignments of error including an allegation that the prosecution presented insufficient evidence of Defendant's specific intent to kill the victim.[1]

For the following reasons, we find that the evidence presented at trial was insufficient for a finding of specific intent to support a verdict of second degree murder. The evidence was also insufficient to convict Defendant of any of the lesser responsive verdicts of manslaughter or negligent homicide. We order the entry of an acquittal.

I.

**ISSUES**

We must decide whether:

(1)     the evidence presented at trial was sufficient to show Defendant's specific intent to kill the victim, a requirement for a conviction of second degree murder;

(2)     if the evidence presented was insufficient to support a conviction of second degree murder, the evidence

---

[1]Defendant also presents the following assignments of error: (1) the trial court erred in allowing the prejudicial misstatement of the prosecutor during his opening statement and in failing to allow the jury to review the 911 tape during deliberations; (2) the trial court erred in allowing a slide photo of the words "Second Degree Murder" during the vior dire examination; (3) there was insufficient evidence presented to identify Defendant as the perpetrator; and, (4) there was insufficient evidence presented to establish that the .357 Magnum found on the scene belonged to the victim or caused the death of the victim. Because we find that there was insufficient evidence to convict Ms. Trahan of second degree murder or any of the lesser included offenses, her other assignments of error are rendered moot because our holding bars retrial on the same charge. *Hudson v. Louisiana*, 450 U.S. 40, 101 S.Ct. 970 (1981).

supports a responsive verdict of a lesser included crime.

II.

**FACTS AND PROCEDURAL HISTORY**

On April 20, 2009, emergency center operators received a 911 call from a woman who identified herself as Mary Trahan. The caller cried for help and reported that her boyfriend had been shot. The State admitted the full recording of the call into evidence. In pertinent part, the call was as follows:

Operator: The person who shot him are they still there?

Caller: Yes, please. It's me. Hurry, please.

Ross Sonnier, a patrol officer with Lafayette City Police Department, arrived first on the scene in response to the 911 call. When he arrived at 119½ Carlin Street in Lafayette, he encountered "Ms. Trahan, a female, waving her arms frantically outside of her house, saying her boyfriend's shot at her house . . . I asked her, where was her boyfriend, where was the gun? And she said both are still in the house."

Officer Sonnier testified that he and three other officers entered the house and found the victim lying on the bathroom floor. He testified that they also located a gun on the bed in the bedroom. He testified that he arrived at the residence within three minutes from the time of the 911 call. He stated that he did not see any towels placed around the victim's body or any evidence that aid had been administered to the victim. On cross-examination, however, Officer Sonnier admitted that he had no knowledge of whether anyone had attempted to render aid to the victim prior to his arrival at the scene.

Dwayne Angelle, a detective with the Lafayette Parish Sheriff's Office, also responded to the 911 call. He stated that he found no forced entry into the house.

2

Detective Angelle testified that he noticed half-cooked hamburgers in a frying pan in the kitchen, and a vehicle outside the house looked as if it were under repair. Detective Angelle further testified that he saw blood on the floor around the victim. The detective noted the stippling seen on the victim's lower back and shoulder area. He explained that a "stippling pattern" referred to the burn marks made from gun powder that is ejected from a gun barrel when the powder contacts the skin. Detective Angelle described the gun located on the bed as a Ruger Security Six .357 Magnum.

The detective then examined the gun retrieved from Defendant's house, and the State admitted the gun into evidence. Detective Angelle noted that the gun was in working order and that if the gun were cocked, it would not take much pressure on the trigger for it to discharge. He further indicated that a finger would have to be inside the trigger guard before the gun could be fired. He testified that he was unable to retrieve any fingerprints from the weapon.

Dr. Joel Carney testified that he worked for the Louisiana Forensic Center and contracted with the Lafayette Parish Coroner's Office. He served as the deputy assistant coroner and performed the autopsy on the victim's body. He described the gunshot wound as entering the victim's right, lower back shoulder and exiting from the upper chest area. He stated the bullet passed through the lower right lung, through the heart, and through the upper left lung. He explained that the stippling pattern on the victim's back indicated that the gun was fired at a distance ranging between a few inches up to four feet away from the victim. Dr. Carney also testified that the toxicology analysis showed that the victim had amphetamine,

3

methamphetamine, and MDMA[2] in his urine at the time of death. Dr. Carney was unable to state, however, how long before the victim's death the drugs were ingested.

On cross-examination, Dr. Carney testified that he did not possess any knowledge as to what caused the gun to discharge or whether or not the shooting was accidental.

Finally, Dwayne Prejean, a lieutenant with the Lafayette City Police Department, testified as a blood spatter expert. He noted there was a bullet hole in the wall at approximately three feet, eleven inches high. In his opinion, from the blood spatter pattern, the victim was probably standing over the bathroom sink when he was shot.

On cross-examination, Lieutenant Prejean admitted that he had no knowledge as to whether or not the gun accidentally discharged. He only knew that a bullet struck the victim.

Lieutenant Prejean's testimony concluded the evidence offered by the State at trial. The defense rested its case without presenting evidence. After deliberation, the jury returned a verdict of guilty of the offense of second degree murder. From this verdict, Defendant appeals.

## III.

## LAW AND DISCUSSION

### Sufficiency of the Evidence

Defendant contends the evidence was insufficient to support a verdict of guilty of second degree murder, and that accordingly, the verdict is contrary to the law and evidence.

---

[2]The United States Food and Drug Administration defines the illicit street drug MDMA (4-methyl-2, dimethoxyamphetamine) as "a methamphetamine analogue, also known as ecstasy, XTC, and X." *See* www.FDA.gov.

When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983).

Second degree murder is defined as "the killing of a human being; (1) When the offender has a specific intent to kill or to inflict great bodily harm[.]" La.R.S. 14:30.1. Defendant contends that her second degree murder conviction is not supported by the weight of the evidence and that, at best, she may be guilty of negligent homicide. Defendant argues that the record does not show that she possessed any specific intent to kill the victim.

"Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La.R.S. 14:10(1). Specific criminal intent may be inferred from the circumstances present in the case and the actions of Defendant. *State v. Carroll*, 95-859 (La.App. 3 Cir. 1/31/96), 670 So.2d 286.

In this case, two circumstances exist from which the jury could have inferred specific intent: that the victim was shot at close range and that the victim and Defendant were involved in an altercation the day of the shooting. This court has stated that the act of aiming a firearm directly at a victim is indicative of intent to kill the victim. *State v. Clark*, 93-1470 (La.App. 3 Cir. 10/5/94), 643 So.2d 463, *writ denied*, 94-2715 (La. 1/9/95), 649 So.2d 418. Moreover, specific intent may be inferred when a wound is inflicted at close range. *State v. Bell*, 471 So.2d 277 (La.App. 4 Cir. 1985) (citations omitted).

A shooting at close range, however, does not *prove* specific intent. This court articulated the following in *State v. Reed*, 00-1537, pp. 7-8 (La.App. 3 Cir. 3/6/02), 809 So.2d 1261, 1266, *writ denied*, 01-1313 (La. 4/25/03), 842 So.2d 391:

> [A]lthough the jurisprudence supports the proposition that specific intent can be inferred from the fact that the victim was shot at close range, that jurisprudence relies on the support of other circumstances indicating specific intent. "The jury should not be permitted to believe that just because someone is killed, the law regards it as a reasonable inference that someone intended to harm him."
> *State v. Davis*, 411 So.2d 2, 6 (La.1982).

Here, though the victim was shot at close range, the "other circumstances" needed to support a finding of specific intent are noticeably lacking. Indeed, no evidence indicates that Defendant possessed a motive for the shooting. Motive is not an essential element of murder, but "a lack of motive may properly be considered as a circumstance mitigating against specific intent." *State v. Mart*, 352 So.2d 678, 681 (La.1977). The State attempted to show motive by repeatedly stating that Defendant and the victim argued the day of the shooting and that Defendant was mad at the victim. The prosecutor's statements to the jury were merely words. Not one piece of *evidence* was introduced to prove an argument or that Defendant was angry at the victim.[3]

The State presented no *evidence* to the jury that could have allowed them to find that Defendant exhibited the requisite specific intent to kill the victim. Though the State presented evidence showing that the victim was shot in the back at close range, it presented no evidence demonstrating that Defendant aimed the gun at

---

[3]Compare with other cases where the State presented evidence showing that prior hostile circumstances between the defendant and the victim existed. *See State v. Shannon*, 531 So.2d 1113 (La.App. 4 Cir. 1988) (a witness saw the defendant shoot the victim in the foot before he shot her in the back), *State v. Noble*, 425 So.2d 734 (La.1983) (witnesses testified as to the defendant's erratic behavior toward the victim prior to the shooting), and *State v. Beck*, 445 So.2d 470 (La.App. 2 Cir.), *writ denied*, 446 So.2d 315 (La.1984) (the defendant testified to her own anger as she slammed an aluminum framed window down on her baby's head).

the victim, how the gun discharged, or, as previously discussed, that any acrimony existed between Defendant and the victim. Thus, we can only conclude that the jury arrived at its verdict because of statements made by the prosecutor and defense counsel in their opening statements and in the prosecutor's closing arguments.

The Louisiana Supreme Court has held that "much credit should be accorded to the good sense and fairmindedness of jurors who have seen the evidence and heard the argument, and have been instructed repeatedly by the trial judge that arguments of counsel are not evidence." *State v. Mitchell*, 94-2078, p. 11 (La. 5/21/96), 674 So.2d 250, 258, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 614 (1996). The closing statement is restricted to "evidence admitted, to the lack of evidence, to conclusion of fact that the state or defendant may draw therefrom, and to the law applicable to the case." La.Code Crim.P. art. 774. *See State v. Hall,* 03-906 (La.App. 5 Cir. 5/26/04), 875 So.2d 996, *writ denied,* 04-1875 (La. 12/10/04), 888 So.2d 834.

While neither the prosecution nor the defense later presented evidence regarding the relationship between Defendant and the victim, in his opening statement, the prosecutor stated that the couple had a bad relationship, she was mad at him, "at some point later that afternoon, they weren't getting along," and that "there was some kind of disturbance going on between the two of them," and therefore, she shot him in cold blood. Defense counsel then in his opening statement discussed the victim's abusive behavior toward Defendant and how the shooting was accidental.

Again, none of this alleged acrimony between the couple was admitted into evidence in any form.

In his closing statement, the prosecutor admitted no evidence existed that the couple was "squabbling." Although, the prosecutor continued, "she was mad at him." Thus, the State reminded the jury of defense counsel's contention that the couple was involved in an abusive relationship and were fighting on the day of the

7

shooting. In his closing argument, defense counsel made no mention of any trouble between the couple, only that the State presented no evidence proving specific intent to kill the victim or disproving that the shooting was accidental.

In *State v. Frost*, 97-1771, pp. 18-19 (La. 12/1/98), 727 So.2d 417, 432-33, *cert. denied*, 528 U.S. 831, 120 S.Ct. 87, *superceded by statute on other grounds*, the supreme court stated:

> This Court has recognized as a matter of well-settled law that the prosecutor has the right to "press upon the jury any view of the case arising out of the evidence–the Supreme Court is bound to credit jurors with common intelligence, conscientiousness, and sense of duty." *State v. Alexander*, 215 La. 245, 40 So.2d 232, 234 (La.1949). Even when we have found the prosecutor to have exceeded the proper bounds of argument, this Court has often criticized the improper arguments without finding that they constituted reversible error. *See, e.g. Byrne, supra; State v. Jarman*, 445 So.2d 1184 (La.1984); *State v. Messer,* 408 So.2d 1354 (La.1982). The standard by which this Court determines whether improper closing argument constitutes reversible error is whether it is "firmly convinced that the jury was influenced by the remarks and that they contributed to the verdict." *State v. Sanders,* 93-0001 p. 16-17 (La. 11/30/94), 648 So.2d 1272, 1285-86, *cert. denied,* 517 U.S. 1246, 116 S.Ct. 2504, 135 L.Ed.2d 194 (1996); *Byrne,* 483 So.2d at 572; *Messer,* 408 So.2d at 1357.

The fact finder is given much discretion in determining credibility and evidence, and the reviewing court will only impinge on his discretion to the extent necessary to guarantee the fundamental protection of due process of law. *State v. Mussall*, 523 So.2d 1305 (La.1988). Because we find that the testimony of the four witnesses for the prosecution was clearly insufficient to establish specific intent, we are firmly convinced that the only explanation for the jury's verdict of second degree murder was the information supplied to them in the opening and closing statements. Those statements are not subject to a sufficiency review under the *Jackson* standard because the statements do not constitute evidence. Thus, because the evidence in the

record was insufficient to support a verdict of second degree murder, we find that reversal of the jury's verdict is necessary to guarantee protection of due process to Defendant.

**Consideration of Lesser Included Offenses**

Louisiana Code of Criminal Procedure Article 821(E) provides that if an appellate court finds the evidence, viewed in the light most favorable to the State, supports only a conviction of a lesser-included responsive offense, the court, in lieu of granting a post verdict judgment of acquittal, may modify the verdict and render a judgment of conviction on the lesser-included responsive offense. Manslaughter and negligent homicide are responsive verdicts to second degree murder. La.Code Crim.P. art. 814(A)(3). We discuss both lesser-included responsive offenses in turn.

*(1) Manslaughter*

"Manslaughter is a homicide that would be first or second degree murder, and thus requires the specific intent to kill, but for 'sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection.'" *State v. Laird,* 09-831, p. 11 (La.App. 3 Cir. 2/10/10), 30 So.3d 1167, 1174, *writ denied*, 10-1018 (La. 11/24/10), 50 So.3d 826 (quoting La.R.S. 14:31).

We have already determined that the evidence did not support a finding that Defendant possessed specific intent to kill; thus, the requirements needed to support a verdict of manslaughter are not met.

*(2) Negligent Homicide*

Louisiana Revised Statutes 14:32(A)(1) provides that negligent homicide is: "The killing of a human being by criminal negligence." "Criminal negligence

exists when, although neither specific nor general criminal intent is present, there is such a disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances." La.R.S. 14:12. "To convict a person of negligent homicide, the State must prove beyond a reasonable doubt that the defendant was criminally negligent and that a killing resulted from this misconduct." *State v. Materre*, 09-1666, p. 11 (La.App. 4 Cir. 12/8/10), 53 So.3d 615, 623 (citations omitted). The supreme court stated in *State v. Desoto*, 07-1804, pp. 8-9 (La. 3/17/09), 6 So.3d 141, 147:

> Jurisprudence shows that the common element in negligent homicide cases involving firearms is a finding that a defendant acted in an unreasonably dangerous or unsafe manner at the time of the discharge of his weapon. Evidence of negligent homicide was found to be sufficient in *State v. McFerson,* 583 So.2d 516, (La.App. 3rd Cir.) *writ denied*, 588 So.2d 113 (La.1991), where it was determined that the defendant acted below the standard of care expected to be maintained by reasonably careful persons under similar circumstances when he brought a loaded gun into a bar, pulled the gun out of his pants pocket, and the gun discharged killing an innocent victim.
>
> Similarly, in *State v. Barberousse,* 458 So.2d 569, (La.App. 3rd Cir. 1984) aff'd, 480 So.2d 273 (La.1985), a defendant was found criminally negligent when he fatally shot his sister when he pulled out a loaded .38 caliber revolver, cocked it and pointed it at another person, supposedly to frighten that person. The gun discharged, with the bullet striking defendant's sister in the chest and fatally wounding her. The courts have also found evidence sufficient in a case wherein the shooter was purportedly under duress when he fired his weapon. In *State v. Parker*, 431 So.2d 114 (La.App. 1st Cir.), *writ denied*, 435 So.2d 433 (La.1983), the defendant was found guilty of negligent homicide even though the evidence indicated that he may have been harassed and fearful at the time of the shooting. Evidence indicated that the defendant shot through his door without first determining who was outside and while knowing that other members of his residence were not in the home, but expected to return to the residence.

In *Desoto*, the supreme court evaluated the case of a hunter who shot and killed his hunting partner, allegedly mistaking him for a deer. The court considered whether the defendant acted in an unreasonably dangerous or unsafe manner at the time of the discharge of his weapon. In reversing this court's judgment of acquittal, the supreme court held that the state had proven its burden of showing that the defendant acted below the standard of care expected to be maintained by a reasonably careful man under like circumstances. Reviewing the evidence, the court noted that the jury that originally convicted the defendant made credibility determinations about the defendant after viewing his conflicting statements to authorities. Moreover, the court observed that the jury was also presented with other evidence, including photographs of the layout of the hunting grounds where the victim was killed as well as photographs depicting the scene as viewed from the position of the defendant and the victim. The jury also heard evidence that the defendant was familiar with the proper handling of guns. Specifically, the defendant possessed a current, valid hunting license and had completed training classes to obtain a Louisiana hunting license and safety certificate. It was uncontested that the defendant purposely pulled the trigger of a high powered hunting rifle, killing his friend. In light of all the evidence, the court found that "[t]here is no escaping the fact that to pull the trigger of a high-powered hunting rifle, capable of accurately hitting a target a football field away, without being sure of his target, was reckless disregard for the safety of others and created an unreasonable risk of harm to others." *Desoto*, 6 So.3d at 150.

The facts of *Desoto* are clearly distinguishable from the present case. Here, the State presented no evidence of how the shooting occurred, and its own witnesses could not rule out the possibility that the shooting was accidental. Moreover, no evidence was introduced as to the manner in which Defendant handled the .357 Magnum found at the scene or whether she had ever previously handled a

11

gun. Thus, unlike in *Desoto*, we find that the State did not meet its burden of proving that Defendant acted below the standard of care expected to be maintained by a reasonably careful person under like circumstances.

In *Materre*, the fourth circuit recently articulated the court's role in reviewing cases where circumstantial evidence formed the basis for conviction. The court stated:

> When circumstantial evidence forms the basis for the conviction, such evidence must exclude every reasonable hypothesis of innocence. La.R.S. 15:438. The court does not determine whether another possible hypothesis suggested by the defendant could afford an exculpatory explanation of the events; rather, when evaluating the evidence in the light most favorable to the prosecution, the court determines whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under *Jackson v. Virginia*, *supra. State v. Davis*, 92-1623 (La. 5/23/94), 637 So.2d 1012.

*Materre*, 53 So.3d at 623.

The circumstantial evidence in this case included the 911 call where Defendant stated, "Yes, please. It's me. Hurry, please" when asked by the dispatcher if the shooter was still at the scene. A Ruger Security Six .357 Magnum was found at the scene, though the prosecution presented no evidence linking the gun to Defendant. The only evidence linking the gun to the crime was Detective Angelle's response of "Yes, sir. It is." when asked by the prosecutor if the Magnum was the gun involved in the shooting. Detective Angelle testified that the gun was in working order and that if the gun were cocked, it would not take much pressure on the trigger for it to discharge.

The evidence suggested that the victim was shot at close range, and Lieutenant Dwayne Prejean, a blood spatter expert, opined that the victim was probably standing over the bathroom sink when he was shot. Dr. Carney testified that

12

the bullet entered the victim's right, lower back shoulder, exiting from the upper chest area.

During his cross-examination of two of the State's witnesses, Dr. Carney and Lieutenant Prejean, defense counsel raised the reasonable hypothesis that Defendant accidentally shot the victim. The State introduced no evidence to rebut that hypothesis. Indeed, Dr. Carney testified that he had no knowledge of how the gun discharged or whether the shooting was accidental. It, therefore, could have been accidental. Similarly, Lieutenant Prejean testified that he had no knowledge of whether the gun accidentally discharged or not. Lieutenant Prejean testified that he only knew that the bullet struck the victim.

We find that, when evaluating the evidence in the light most favorable to the prosecution, the possibility that the shooting was accidental is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt.

Thus, the State did not meet its burden to convict Defendant of the offense of negligent homicide.

IV.

**CONCLUSION**

Accordingly, for the reasons stated above, Defendant's conviction and sentence are vacated. The trial court shall order that an acquittal be entered.

**REVERSED. ENTRY OF ACQUITTAL ORDERED.**

13

**11-00148**

**STATE OF LOUISIANA**

**VERSUS**

**MARY HENDERSON TRAHAN**

**GREMILLION, Judge, dissents and assigns written reasons.**

Louisiana Code of Criminal Procedure Article 821(E) provides that the appellate court can render a judgment of a lesser included responsive offense:

> If the appellate court finds that the evidence, viewed in a light most favorable to the state, supports only a conviction of a lesser included responsive offense, the court, in lieu of granting a post verdict judgment of acquittal, may modify the verdict and render a judgment of conviction on the lesser included responsive offense.

Pursuant to La.R.S. 14:12:

> Criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances.

The majority properly concludes that there is no evidence of motive or prior arguing (i.e. no evidence of specific intent) between Defendant and the victim. That precludes a verdict of second degree murder, but not one of negligent homicide. There was no dispute at trial that Defendant pulled the trigger. In fact, defense counsel in his opening statement described how Defendant came into possession of the gun and that it discharged while in her possession. In closing, defense counsel repeatedly referred to Defendant's shooting the victim as an "accident."

Although it is well-settled that opening statements and closing arguments are not evidence, the record shows that the only issue presented to the jury was whether Defendant intentionally or accidentally shot the victim. While this posture

explains the State's lackluster presentation of evidence, it does not excuse it. Nevertheless, considering the evidence that the State did put forth, it proved beyond a reasonable doubt that Defendant was guilty of negligent homicide.

Although not in dispute at the trial level, Defendant now argues that the State failed in identifying her as the person who shot the victim. Admittedly, the State did not put on much evidence of how the shooting occurred. However, Defendant indicated in the 911 call that "It's me" in response to the 911 operator's question of whether the shooter was still at the scene. In addition, the gun was found on the bed near where the victim lay dead, corroborating her admission that she was the shooter. Accordingly, there is no doubt that Defendant shot the victim.

The only remaining issue is whether the State proved that Defendant was criminally negligent. The police found the victim shot from behind at close range. Pointing a loaded gun at the victim—even if the gun was accidentally discharged—exhibits a gross deviation below the standard of care expected from a reasonably careful person. Accordingly, I would find that the evidence is sufficient to convict of her the responsive verdict of negligent homicide.